COOLEY LLP
JOHN C. DWYER (136533) dwyerjc@cooley.com
JESSICA VALENZUELA SANTAMARIA (220934) jsantamaria@cooley.com
ADAM TRIGG (261498) atrigg@cooley.com
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendants
XENOPORT, INC., RONALD W. BARRETT,
WILLIAM J. RIEFLIN, DAVID A. STAMLER,
MARK A. GALLOP and DAVID R. SAVELLO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE XENOPORT, INC. SECURITIES LITIGATION | Case No. 10-CV-3301 RMW |
| | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| | Date: May 20, 2011 |
| | Time: 9:00 am |
| | Judge: Hon. Ronald M. Whyte |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

**TABLE OF CONTENTS**

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I.     INTRODUCTION ...................................................................................................... 2

II.    STATEMENT OF ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS ........ 4

    A.    Defendants ...................................................................................................... 4

    B.    XP13512 ........................................................................................................... 4

    C.    XenoPort Discloses Carcinogenicity Study Results to the Market ...................... 5

    D.    FDA Accepts the 512 NDA .............................................................................. 6

    E.    FDA Issues Complete Response Letter .............................................................. 7

    F.    The Consolidated Complaint ............................................................................ 8

III.   LEGAL STANDARDS ............................................................................................... 9

    A.    General Standards for Motions to Dismiss ........................................................ 9

    B.    Plaintiffs Must Plead Falsity And Scienter With Particularity ............................ 9

IV.   ARGUMENT ........................................................................................................... 11

    A.    Plaintiffs Fail to State a Claim for Violation of Section 10(b) ............................ 12

          1.    The Consolidated Complaint Should Be Dismissed Under Rule 8 Because It Lacks A "Short and Plain Statement of the Claim" And "Simple, Concise, and Direct" Allegations .......................................... 12

          2.    Plaintiffs Fail to Allege Falsity and Materiality with Particularity .......... 13

               a.    Plaintiffs Fail to Allege Which Statements Were False or Why They Were False ................................................................ 13

               b.    Plaintiffs Fail To Adequately Plead That Any Statements Were Misleading Due To Allegedly Omitted Information .......... 16

                    i.    Plaintiffs Fail To Establish That The Alleged Omission Rendered Any Statements By The Company Misleading ...........................................................16

                    ii.    XenoPort Disclosed The Information Plaintiffs Claim Was Omitted ................................................................ 17

               c.    The Results Of Gabapentin's Carcinogenicity Studies Were Publicly Available And Well-Known To Reasonable Investors ....................................................................... 18

          3.    Plaintiffs Fail To Plead With Particularity Facts That Give Rise To A Strong Inference Of Scienter ..................................................... 19

               a.    Plaintiffs' Conclusory And Bare-Bones Allegations Of Scienter Are Plainly Insufficient ........................................ 20

               b.    The Disclosure Of 512's Carcinogenicity Studies Is Fatal To Plaintiffs' Claims As It Defeats Scienter ........................ 21

          4.    Plaintiffs Fail To Sufficiently Allege Loss Causation ............................ 22

    B.    Plaintiffs Fail to State a Claim for Violation of Section 20 ................................ 23

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

i.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

**TABLE OF CONTENTS**
**(CONT.)**

PAGE

     C.     The Consolidated Complaint Should Be Dismissed with Prejudice.....................23

V.     CONCLUSION ..............................................................................................................24

1

### TABLE OF AUTHORITIES

2

PAGE

3

CASES

4

*In re Autodesk, Inc. Sec. Litig.*,
   132 F. Supp. 2d 833 (N.D. Cal. 2000) ..................................................................... 10

5

6

*Barth v. Novasenor*,
   No. C-91-0803-DLJ, 1991 U.S. Dist. LEXIS 18079 (N.D. Cal. Dec. 6, 1991) ..................... 17

7

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ........................................................................................... 10

8

9

*Berry v. Valence Tech., Inc.*,
   175 F.3d 699 (9th Cir. 1999) ......................................................................... 17, 19

10

*Blake v. Dierdorff*,
   856 F.2d 1365 (9th Cir. 1988) ............................................................................. 9

11

12

*In re Bristol-Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004) .................................................................. 13

13

14

*Brody v. Transitional Hosps. Corp.*,
   280 F.3d 997 (9th Cir. 2002) ................................................................. 11, 16, 19

15

*In re Calpine Corp.*,
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) .............................................................. 13

16

17

*Chiarella v. United States*,
   445 U.S. 222 (1980) ........................................................................................... 11

18

19

*In re Computerized Thermal Imaging, Inc., Sec. Litig.*,
   Civ. No. 02-611-KI, 2003 U.S. Dist. LEXIS 26500 (D. Or. Apr. 17, 2003) .................. 16, 17

20

*Constr. Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.*,
   Case No. 07CV1111-IEG-RBB, 2008 U.S. Dist. LEXIS 38899
   (S.D. Cal. May 12, 2008) .......................................................................... 14, 15, 21

21

22

23

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .............................................................. 10

24

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) .......................................................................... 15, 16

25

26

*In re Daou Sys., Inc.*,
   411 F.3d 1006 (9th Cir. 2005) .......................................................................... 14, 22

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

iii.

**DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW**

**TABLE OF CONTENTS**
**(CONT.)**

PAGE

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ............................................................................... 9

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................... 3, 22

*In re Dura Pharms., Inc. Sec. Litig.*,
  548 F. Supp. 2d 1126 (S.D. Cal. 2008) ............................................................... 15

*In re Foxhollow Techs., Inc. Sec. Litig.*,
  No. C 06-4595 PJH, 2008 WL 2220600 (N.D. Cal. May 27, 2008) ....................... 11

*In re Fritz Cos. Sec. Litig.*,
  282 F. Supp. 2d 1105 (N.D. Cal. 2003) .............................................................. 10

*In re GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994) ....................................................................... 10, 12

*Gold v. Morrice*,
  Case No. CV 07-00931 DDP(JTLx), 2008 U.S. Dist. LEXIS 43466
  (C.D. Cal. Jan. 31, 2008) ............................................................................ 12, 13

*In re Hansen Natural Corp. Secs. Lit.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) .............................................................. 12

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) .......................................................................... 23

*Howard Gunty Profit Sharing v. Quantum Corp.*,
  Civ. No. 96 20711 SW, 1997 U.S. Dist. LEXIS 23532 (N.D. Cal. Aug. 14, 1997) .............. 17

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
  927 F. Supp. 1297 (C.D. Cal. 1996) .................................................................. 10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) .......................................................................... 22

*N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
  Case No. 2:07-cv-5756-FMC-FFMx, 2009 U.S. Dist. LEXIS 94241 (C.D. Cal. Sept.
  25, 2009) .......................................................................................... 12, 13

*In re Nuvelo, Inc. Sec. Litig.*,
  No. C 07-4056 VRW, 2008 U.S. Dist. LEXIS 98441 (N.D. Cal. Dec. 4, 2008) ................. 22

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................ 23

Cooley LLP
Attorneys At Law
Palo Alto

iv.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

**TABLE OF CONTENTS**
**(CONT.)**

PAGE

*Robertson v. Dean Witter Reynolds, Inc.*,
  749 F.2d 530 (9th Cir. 1984) ................................................................................................. 9

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ................................................................................... 10, 11, 19

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ................................................................................... 11, 17, 19

*South Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ................................................................................... 10, 11, 19

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ............................................................................................. 23

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) ................................................................................................. 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  127 S. Ct. 2499 (2007) ........................................................................................... 11, 19, 21

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ............................................................................... 10, 23, 24

*In re VeriFone Sec. Litig.*,
  784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) ............................ 9

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
  259 F.R.D. 490 (W.D. Wash. 2009) ..................................................................................... 12

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ..................................................................... 9, 12, 13, 21

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................... 13

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*,
  67 F.3d 605 (7th Cir. 1995) ........................................................................................... 17, 19

*Wool v. Tandem Computers, Inc.*,
  818 F.2d 1433 (9th Cir. 1987) ............................................................................................. 23

*Yanek v. Staar Surgical Co.*,
  388 F. Supp. 2d 1110 (C.D. Cal. 2005) ......................................................................... 19, 23

v.

**DEFENDANTS' NOTICE OF MOTION AND MOTION**
**TO DISMISS CONSOLIDATED COMPLAINT**
**10-CV-3301 RMW**

## TABLE OF CONTENTS
### (CONT.)

PAGE

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)........................................................................ 9, 11, 17

*In re Zyprexa Prods. Liab. Litig.*,
   549 F. Supp. 2d 496 (E.D.N.Y. 2008) ........................................................ 19

**STATUTES**

15 U.S.C. § 78u-4(b)..........................................................................................*passim*

15 U.S.C. § 78u-5(c) ......................................................................................... 15

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 8...................................................................*passim*

Federal Rule of Civil Procedure 9(b) ............................................................. 1, 10, 11

Federal Rules of Civil Procedure 12(b)(6) ..................................................... 1, 9

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

vi.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS MATTER:**

PLEASE TAKE NOTE that on May 20, 2011, or as soon thereafter as this motion may be heard, defendant XenoPort, Inc. ("XenoPort" or the "Company") and individual defendants Ronald W. Barrett, William J. Rieflin, David A. Stamler, Mark A. Gallop, and David R. Savello ("Individual Defendants" and, collectively with XenoPort, the "Defendants") will and hereby do move to dismiss all claims asserted against them in Plaintiffs' Consolidated Complaint For Violations Of The Federal Securities Laws ("Consolidated Complaint"), pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) and Section 21D(b) ("PSLRA") of the Securities Exchange Act of 1934, as amended ("Exchange Act"), 15 U.S.C. § 78u-4(b).   Defendants seek an order dismissing Plaintiffs' Consolidated Complaint with prejudice.   This motion is based on the pleadings; the accompanying Memorandum of Points and Authorities; Defendants' Request for Judicial Notice; the Declaration of John C. Dwyer ("Dec.") and exhibits ("Ex.") thereto; and other matters as may be presented in connection with the hearing on the motion.

**STATEMENT OF ISSUES TO BE DECIDED**

A.      Whether Plaintiffs fail to satisfy Rule 8 when the Consolidated Complaint places the burden on the reader to determine which of the litany of statements attributed to Defendants are allegedly false and why?

B.      Whether Plaintiffs fail to plead with the required particularity under Rule 9(b) and the PSLRA that Defendants' statements were materially false or misleading at the time they were made when the Consolidated Complaint includes no allegations as to which statements were false or misleading or why they were false or misleading?

C.      Whether Plaintiffs fail to plead with the required particularity under Rule 9(b) and the PSLRA facts that raise a strong inference of scienter when the Consolidated Complaint includes no allegations regarding any Individual Defendant's state of mind, makes no reference to witness testimony or documents suggesting Defendants knew the statements were false or misleading at the time they were allegedly made, and includes no allegations regarding Defendants' possible motive for misleading the public?

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

1

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

D.    Whether Defendants' alleged misrepresentations regarding their "optimism" and "belief" are inactionable forward-looking statements under the PSLRA's "safe harbor" provision?

E.    Whether Plaintiffs fail to adequately plead loss causation when the alleged omitted facts were disclosed to the market months before the class period and the Consolidated Complaint makes no attempt to disaggregate loss due to the alleged fraud from loss due to other confounding factors?

F.    With respect to the second count (violation of Exchange Act § 20(a)), whether Plaintiffs fail to adequately plead that the Individual Defendants are liable as control persons when they fail to plead a violation of Section 10(b) in the first instance?

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

It has become commonplace in the pharmaceutical industry for lawsuits to be filed any time there is a stock drop following a negative announcement regarding a company's leading drug candidate. That's what has happened here. Plaintiffs hastily filed a complaint for securities fraud after the announcement that the FDA failed to approve XenoPort's leading drug candidate, XP13512 ("512"). However, the drop in XenoPort's stock price that followed was not due to any fraud, and Plaintiffs fail to allege a single fact in the Consolidated Complaint to establish that it was. The PSLRA was enacted precisely to prevent lawsuits like this one from proceeding and to avoid the unjustified costs and burdens that such cases impose on public companies and the Federal court system.

Rather than pleading the kind of particularized facts necessary to state a claim for securities fraud under the PSLRA, the Consolidated Complaint simply quotes from numerous XenoPort public statements and SEC filings, then generally alleges that the statements were false and misleading. Plaintiffs never identify the particular statements they claim were misleading, why they were misleading, or why Defendants knew they were misleading at the time they were made. Further, the single paragraph purportedly containing scienter allegations comes nowhere close to creating any inference, much less a cogent and compelling one, that Defendants knew the alleged statements were false or misleading. It is, in fact, a generic paragraph regularly used by

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

2.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

one of Plaintiffs' law firms in its many securities complaints.  These scienter allegations contain absolutely no facts particular or unique to XenoPort or the Individual Defendants.  There are no allegations regarding what any particular Individual Defendant knew at any particular time; there are no statements attributed to confidential witnesses or others shedding light on the Defendants' knowledge; there are no internal documents cited that are inconsistent with any of the Company's public statements; and there are no allegedly suspicious stock sales suggesting the requisite *mens rea*.  The Consolidated Complaint comes nowhere close to satisfying the pleading requirements of the PSLRA.

Further, Plaintiffs' case fails as a matter of judicially-noticeable fact.  Defendants actually publicly disclosed the very information the Consolidated Complaint alleges was fraudulently concealed.  Plaintiffs allege that Defendants failed to disclose the results of 512's carcinogenicity studies in which rats developed tumors at high doses.  However, less than a year before the Class Period began, Defendants disclosed those very results during a publicly-accessible conference call.  Whether Plaintiffs chose to ignore this fact or simply overlooked it does not matter.  Either way, it is fatal to Plaintiffs' entire theory and case.

The simple fact is that shareholders in XenoPort, like investors in all drug development companies, invested in the Company knowing that their shares in the Company would be worth far more if the FDA approved 512, but far less if the FDA did not.  That is the very risk/reward calculus that attracted the shareholders in the first place.  The United States Supreme Court has made clear that the federal securities laws do not provide insurance when such investments fail to pay off.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) ("[T]he [securities] statutes make these [securities fraud] actions available, not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause.")

Given the glaring deficiencies in the Consolidated Complaint, it should be dismissed with prejudice.  Plaintiffs filed their first complaint in this case over six months ago.  Since being appointed lead plaintiffs, Plaintiffs have had two months to investigate and discover facts to improve upon the original complaints.  Yet, Plaintiffs apparently could not muster any additional

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN                    3.                    Defendants' Notice of Motion and Motion
                                                    to Dismiss Consolidated Complaint
                                                    10-CV-3301 RMW

facts to support their claims.  Instead, Plaintiffs simply recycled a previous complaint without adding a single additional allegation.  Plaintiffs have conceded that this is the best they can do and they have no additional facts to cure the Consolidated Complaint's deficiencies.  As such, dismissal with prejudice is warranted.

## II.  STATEMENT OF ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS

### A.  Defendants

XenoPort is a biopharmaceutical company headquartered in Santa Clara, California.  (¶ 15.)[1] It develops product candidates that utilize the body's natural nutrient transport mechanisms to improve the therapeutic benefits of existing drugs – known as "parent drugs." (¶ 2.)  XenoPort's product candidates are created by modifying currently marketed parent drugs to correct deficiencies in their oral absorption, distribution and/or metabolism.  (Ex. N.)  A key component of XenoPort's strategy is to capitalize on the known safety, efficacy, and established drug development history of the parent drugs.  (*Id.*)  The Company also seeks approval of its product candidates to treat indications for which the parent drugs have not been approved, but for which physicians use them after demonstrated efficacy in clinical trials.  (*Id.*)

The Individual Defendants named in the Consolidated Complaint are identified as Ronald W. Barrett, XenoPort's co-founder and Chief Executive Officer; William J. Rieflin, XenoPort's President; David A. Stamler, XenoPort's Chief Medical Officer; Mark A. Gallop, XenoPort's Senior Vice President of Research; and David R. Savello, XenoPort's Senior Vice President of Development.  (¶¶ 16, 17, 18, 19, 20.)

### B.  XP13512

During the class period, XenoPort was developing its lead product candidate, XP13512, also known as gabapentin enacarbil.  (¶ 37.)  XenoPort created 512, which was previously known as "Solzira" and is currently known by the tradename "Horizant," by modifying its parent drug, gabapentin.  (Exs. N, Q.)  512 is designed to improve upon the pharmacokinetics of gabapentin by taking advantage of high-capacity transport mechanisms in the gastrointestinal tract to improve

---

[1] All paragraph references are to the Consolidated Complaint.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

4.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

absorption.  (Ex. A.)  Gabapentin has been sold by Pfizer Inc under the trade name Neurontin since 1993 and is currently sold as a generic drug by a number of companies.  (Exs. N, Q.)  Gabapentin is approved in the United States to treat seizures in patients with epilepsy and for the management of post−herpetic neuralgia ("PHN").  (*Id*.)

XenoPort has conducted clinical studies of 512 for a number of potential indications, including moderate-to-severe primary Restless Legs Syndrome ("RLS"), PHN, painful diabetic neuropathy ("PDN") and migraine prophylaxis.  (Ex. N.)  The studies produced positive results for 512 as a potential treatment for RLS and PHN.  (¶¶ 35, 40, 42, 43, 45, 47; Ex. N.)  Based on these studies, on January 9, 2009, XenoPort, through its distribution partner, filed a New Drug Application ("NDA") with the FDA for 512 as a treatment for RLS.  (¶ 35;  Ex. G.)

### C.  XenoPort Discloses Carcinogenicity Study Results to the Market

As part of 512's development, XenoPort conducted preclinical carcinogenicity studies of 512 administered to rats.  (¶ 52; Ex. G.)  The studies revealed an increased incidence of pancreatic acinar cell tumors in rats at the highest doses.  Similar findings were also known for gabapentin, 512's parent drug.  (¶ 52; Ex. G.)  The Company disclosed the results of 512's carcinogenicity studies to the public during a quarterly earnings conference call in May 2008:

> **Katherine Xu** – *Credit Suisse – Analyst*          Ron, could you give us a summary of the long-term tox studies of gabapentin, what we know and what you know, and also an update potentially on your long-term tox studies for the 512 compound?
>
> **Ron Barrett** -  *XenoPort, Inc. – CEO*          Sure. With regard to gabapentin, this is a molecule that has a remarkable preclinical safety profile. Doses in the studies with gabapentin went up to 2 grams per day in rodents and also a very high level in the monkey studies, and really the only chronic toxicology finding that was in those studies was hyaline droplet formation in the kidneys that led to kidney damage. And that's a known effect of molecules in the chemical structure class of gabapentin, where the drug binds the alpha-2-microglobulin and forms these droplets in the kidneys. That is a male Wistar rate [sic] phenomenon. It doesn't occur in other species and has been deemed to be not relevant to human toxicology.
>
> **In terms of carcinogenicity, the one finding in the gabapentin studies was pancreatic acinar cell tumors in male Wistar rates [sic] at the highest dose. And, again, the work was done to get the FDA comfortable that this did not represent a significant risk to humans.** It was found only in rats, only in male rats, and not in other -- in mice.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

5.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

With regard to our package, **we've done a full clinical or preclinical safety package that included long-term tox as well as two-year carcinogenicity studies in two species. And what we've indicated is that the safety profile [of 512] is very similar if not identical to gabapentin**, that we have not uncovered any issues that we believe will affect the NDA timing nor the probability of successful NDA approval from the preclinical tox side.

(Ex. R (emphasis added).)   No further questions were asked regarding the carcinogenicity studies. The call was accessible to all investors as well as members of the public.  Among the participants on the call were analysts from RBC Capital Markets, Cowen and Company, Credit Suisse, and Ladenburg Thalmann & Company Inc.  (*Id.*)

### D.   FDA Accepts the 512 NDA

The Class Period in the Consolidated Complaint begins on March 16, 2009.  On that date, the FDA accepted the 512 NDA for review.  (¶ 35.)  Over the next several months, XenoPort indicated to investors that the success of its clinical studies caused XenoPort to be "optimistic" and "believe" that the studies demonstrated sufficient safety and efficacy for the FDA to approve the NDA.  (¶¶ 36, 41, 48.)  But, XenoPort also repeatedly warned investors of the risks inherent in its business, including the risk that 512 would not receive FDA approval.  (Exs. H, I, J, K, L, S, N, Q.)  For example, the Company warned that the FDA might not approve 512 or other products based on the FDA's interpretation of its preclinical and clinical testing:

XP13512 has been evaluated in a Phase 3 clinical program for RLS in the United States and is currently being evaluated in a Phase 2 clinical trial for RLS in Japan and in Phase 2 clinical trials for neuropathic pain and migraine prophylaxis in the United States. . . . Any of our product candidates could be unsuccessful if it:

- does not demonstrate acceptable safety and efficacy in preclinical studies or clinical trials or otherwise does not meet applicable regulatory standards for approval;

- does not offer therapeutic or other improvements over existing or future drugs used to treat the same conditions;

- is not capable of being produced in commercial quantities at acceptable costs; or

- is not accepted in the medical community and by third-party payors. . . .

(Exs. N, Q.)  The Prospectus went on to state:

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN

6.

**Defendants' Notice of Motion and Motion to Dismiss Consolidated Complaint**
**10-CV-3301 RMW**

> Our product candidates and the activities associated with their development and commercialization are subject to comprehensive regulation by the FDA and other agencies in the United States and by comparable authorities in other countries. . . . The inability to obtain FDA approval or approval from comparable authorities in other countries would prevent us and our collaborative partners from commercializing our product candidates in the United States or other countries. We or our collaborative partners may never receive regulatory approval for the commercial sale of any of our product candidates. . . . Neither we nor our collaborative partners have received regulatory approval to market any of our product candidates in any jurisdiction. . . . **The FDA has substantial discretion in the approval process and may refuse to approve any application or decide that our or our collaborative partners' data is insufficient for approval and require additional preclinical, clinical or other studies. For example, varying interpretations of the data obtained from preclinical and clinical testing could delay, limit or prevent regulatory approval of any of our product candidates.**

(Exs. N, Q (emphasis added).)

### E.    FDA Issues Complete Response Letter

Despite the success that 512 exhibited as a treatment for RLS in the clinical studies, on February 17, 2010, XenoPort received a Complete Response Letter from the FDA.  (¶ 52.)  A Complete Response Letter is issued by the FDA when the review of a file is completed and questions remain that preclude the approval of an NDA in its current form.  (¶ 52.)  In the case of 512, the FDA indicated that the previously disclosed results of its preclinical studies, showing an increased incidence of pancreatic acinar cell tumors in rats, was of sufficient concern to preclude approval at that time.  (¶ 52.)  XenoPort publicly disclosed receipt of the Complete Response Letter that same day in a press release that stated, among other things:

> [XenoPort's distribution partner] and XenoPort are currently evaluating the Complete Response letter, in which the FDA indicated that a preclinical finding of pancreatic acinar cell tumors in rats was of sufficient concern to preclude approval of *Horizant* [512] for RLS at this time.  FDA acknowledged that similar findings were known for gabapentin at the time of its approval for refractory epilepsy, but concluded that the seriousness and severity of refractory epilepsy justified the potential risks.

(Ex. G.)  XenoPort's stock dropped $12.93 per share that day to close at $6.67 per share.  (¶ 53.)[2]

---

[2]  In October, 2010, XenoPort and its distribution partner submitted a response to the FDA's Complete Response Letter.  The Company's response includes new data from nonclinical studies of 512 and two epidemiological studies of gabapentin use and cancer.  The resubmission also includes a final safety update with new safety information on patients in clinical studies who used 512.  The FDA accepted the Company's resubmission for review and is expected to respond by April 6, 2011.  (Ex. T.)

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN

7.

**Defendants' Notice of Motion and Motion
to Dismiss Consolidated Complaint
10-CV-3301 RMW**

### F.     The Consolidated Complaint

On July 28, 2010, a putative class action lawsuit was filed in this Court against XenoPort and certain members of its management team purportedly on behalf of a class of XenoPort shareholders who purchased the Company's stock between May 5, 2009 and February 17, 2010. On September 24, 2010, a second lawsuit was filed in this Court by plaintiff Ie-Chen Cheng against the same defendants on behalf of a class of XenoPort shareholders who purchased the Company's stock between March 16, 2009 and May 5, 2010 (the "Class Period").[3]  The Court appointed Cheng as lead plaintiff on November 5, 2010 and consolidated the two actions.  On January 4, 2011, Plaintiffs filed the Consolidated Complaint, which is identical to the Cheng complaint filed more than three months earlier.  It contains no new allegations regarding confidential witnesses, contemporaneous documents, stock sales, or any other matters not previously alleged.

The Consolidated Complaint contains ten pages consisting of twenty-three paragraphs of quotes extracted from XenoPort's publicly available press releases, SEC filings, and conference call transcripts under the heading "Defendants' False and Misleading Statements."  (¶¶ 32-54.) The majority of the excerpts pertain to XenoPort's quarterly earnings announcements (¶¶ 35, 40, 47), clinical trial results (¶¶ 35, 40, 42, 43, 45, 46, 47) and partnership agreements (¶¶ 32, 34, 39). Of the ten pages, the Consolidated Complaint emphasizes with italics or bold font only two statements, both made by defendant Ronald Barrett, XenoPort's CEO, in conference calls with analysts:

- "We remain optimistic *that the safety and efficacy data generated for the 512 RLS program will result in a favorable action by the FDA."*  (¶ 36, emphasis in complaint.)

- "[W]e continue to believe that our NDA is complete and provides **strong evidence of the safety and** *efficacy of 512* for treating moderate to severe primary RLS."  (¶ 41, emphasis in complaint.)

---

[3] It is unclear why the Class Period purportedly ends on May 5, 2010, as the Consolidated Complaint includes allegations only through February 17, 2010 — the date on which XenoPort announced the receipt of the Complete Response letter.

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN

8.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

The Consolidated Complaint does not explain what the emphasis is supposed to indicate to the reader or the difference, if any, between the italicized phrase (¶ 36), the phrase that is both italicized and bold (¶ 41), and remaining statements that have no emphasis.

## III.   LEGAL STANDARDS

### A.   General Standards for Motions to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint as a matter of law for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true. *See Blake v. Dierdorff*, 856 F.2d 1365, 1368 (9th Cir. 1988). The court need not, however, accept legal conclusions asserted as "facts." *In re VeriFone Sec. Litig.*, 784 F. Supp. 1471, 1476 n.5 (N.D. Cal. 1992) (citation omitted), *aff'd*, 11 F.3d 865 (9th Cir. 1993). Further, the court may consider materials incorporated into the complaint by reference and other matters subject to judicial notice. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009).

### B.   Plaintiffs Must Plead Falsity And Scienter With Particularity

To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, Plaintiffs must allege: (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which they relied (5) which proximately caused plaintiffs' injury. *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 388 (9th Cir. 2002) (citation omitted).

Federal Rule of Civil Procedure 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Where "[d]etermining whether 'the pleader is entitled to relief' requires a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations," the complaint violates Rule 8 and should be dismissed. *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1243 (N.D. Cal. 1998). Such "puzzle-style pleadings in securities cases abuse the principles of Rule 8 not because they are not short . . . . Instead, puzzle-style pleadings clash with Rule 8

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN                                          9.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

1    because they are not plain – their evasive, non-committal style significantly increases the burdens

2    to both the defendants and the court in evaluating a complaint's satisfaction of the PSLRA

3    pleading requirements." *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d

4    1069, 1081 (N.D. Cal. 2005).

5         Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting

6    fraud or mistake."   Rule 9(b) "requires the inclusion of specific facts regarding the alleged

7    fraudulent activity, such as the time, date, places, content of each fraudulent representation, the

8    reasons that the representation is false, and the identity of the person or persons engaged in the

9    fraud." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 839 (N.D. Cal. 2000).

10        The PSLRA imposes even more stringent requirements for pleading falsity and scienter

11   and requires Plaintiffs to provide a "high level of detail."   *South Ferry LP, No. 2 v. Killinger*, 542

12   F.3d 776, 784 (9th Cir. 2008).   To satisfy the heightened pleading requirement, Plaintiffs must

13   identify with particularity (1) each statement alleged to have been misleading, (2) the reason or

14   reasons why the statement is misleading, and (3) if an allegation regarding the statement or

15   omission is made on information and belief, all facts on which that belief is formed.  *See* 15

16   U.S.C. § 78u-4(b)(1); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085 (9th Cir. 2002),

17   *abrogated on other grounds in South Ferry LP*, 542 F.3d 776.  To establish falsity, plaintiffs must

18   allege specific factual conditions contemporaneous with false statements that were known by

19   defendants.  *In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1112 (N.D. Cal. 2003).  It must be

20   clear from the complaint what statements Plaintiffs allege were false and why they were false.

21   *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).   Plaintiffs must also set forth an

22   explanation as to why the disputed statement was untrue or misleading when made.   *In re*

23   *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994), *superseded by statute on other*

24   *grounds as stated in, Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297

25   (C.D. Cal. 1996).

26        If Plaintiffs allege an omission of material fact, they must allege that Defendants had a

27   duty to disclose the omitted information.  *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)

28   ("Silence, absent a duty to disclose, is not misleading . . . .").   There is no duty to disclose

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN                                  10.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

material information simply because it exists.  *In re Foxhollow Techs., Inc. Sec. Litig.*, No. C 06-4595 PJH, 2008 WL 2220600, at *16 (N.D. Cal. May 27, 2008) (citing *Chiarella v. United States*, 445 U.S. 222, 235 (1980)).  Rather, "[t]o be actionable under the securities laws, an omission must be misleading; . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  Further, a "plaintiff must plead 'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care.'"  *Zucco*, 552 F.3d at 991 (quoting *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999), *abrogated on other grounds in South Ferry LP*, 542 F.3d 776).  If a statement is not false or misleading but merely incomplete, it is not actionable under the securities laws.  *Brody*, 280 F.3d at 1006.

A complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The Ninth Circuit has defined the requisite state of mind, or scienter, as "deliberate recklessness" or "conscious misconduct," and requires Plaintiffs to plead "particular facts giving rise to a strong inference" of that mental state.   *South Ferry LP*, 542 F.3d at 782 (internal quotations and citations omitted).  To establish "deliberate recklessness" or "conscious misconduct," Plaintiffs "must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity."  *Silicon Graphics*, 183 F.3d at 974; *see also Ronconi*, 253 F.3d at 429.  Moreover, a complaint will survive a motion to dismiss only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).

## IV.   ARGUMENT

The Consolidated Complaint is legally deficient on multiple fronts.  It does not satisfy the basic pleading requirements of Rule 8; it fails to adequately allege falsity with the particularity required of Rule 9(b) and the PSLRA; it is completely devoid of particularized scienter allegations; and it fails to adequately plead loss causation.  Each of these deficiencies is fatal for

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

11.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

the Consolidated Complaint, and each provides an independent basis to grant this Motion to Dismiss.

### A.   Plaintiffs Fail to State a Claim for Violation of Section 10(b)

#### 1.   The Consolidated Complaint Should Be Dismissed Under Rule 8 Because It Lacks A "Short and Plain Statement of the Claim" And "Simple, Concise, and Direct" Allegations

The Consolidated Complaint is an improper "puzzle-pleading" that is an "unwelcome and wholly unnecessary strain on defendants and the court system." *GlenFed, Inc.*, 42 F.3d at 1554. Such complaints violate Federal Rule of Civil Procedure 8 because they "place the burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting Plaintiffs' claims." *Wenger*, 2 F. Supp. 2d at 1244. District courts in this Circuit have repeatedly dismissed complaints that rely on this increasingly disfavored pleading format. *See, e.g.*, *Wenger*, 2 F. Supp. 2d at 1244; *N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, Case No. 2:07-cv-5756-FMC-FFMx, 2009 U.S. Dist. LEXIS 94241, at *20-21 (C.D. Cal. Sept. 25, 2009); *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 259 F.R.D. 490, 502 (W.D. Wash. 2009); *Gold v. Morrice*, Case No. CV 07-00931 DDP(JTLx), 2008 U.S. Dist. LEXIS 43466, at *12-16 (C.D. Cal. Jan. 31, 2008); *In re Hansen Natural Corp. Secs. Lit.*, 527 F. Supp. 2d 1142, 1152-1153 (C.D. Cal. 2007).

Plaintiffs' Consolidated Complaint "lumps all alleged misrepresentations together in one unwieldy [11-page] segment." *Wenger*, 2 F. Supp. 2d at 1243. It "then follows with one conclusory paragraph" (¶ 54) asserting that the statements violate Rule 10b-5. *Hansen Natural Corps.*, 527 F. Supp. 2d at 1152. The Consolidated Complaint "does not indicate which among the [11] pages of statements are alleged to be false, does not follow each allegedly false statement with factors showing it was false, and does not provide any inkling that any statement was false when made." *Wenger*, 2 F. Supp. 2d at 1244. Plaintiffs merely assert that defendants omitted certain study results and leave the reader to "divine why each alleged statement was false or misleading." *Id.* By requiring "a laborious deconstruction and reconstruction of a great web of scattered, vague, redundant, and often irrelevant allegations," Plaintiffs have failed to set forth a "short and plain statement" and have failed to make each allegation "simple, concise and direct"

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO
913438 /HN
12.
DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

in violation of Rule 8(d). *Id.* at 1243-44. The Consolidated Complaint should be dismissed on this ground alone. *See id.* at 1244; *N.Y. State Teachers' Ret. Sys.*, 2009 U.S. Dist. LEXIS 94241, at *20-21; *Gold*, 2008 U.S. Dist. LEXIS 43466, at *12-16.

### 2.   Plaintiffs Fail to Allege Falsity and Materiality with Particularity

#### a.   Plaintiffs Fail to Allege Which Statements Were False or Why They Were False

The Consolidated Complaint does not allege that any particular statement was false or misleading. This failure also requires dismissal. 15 U.S.C. §§ 78u-4(b)(3)(A), (b)(1)(B) ("[T]he court shall . . . dismiss the complaint if" it does not "specify each statement alleged to have been misleading.").

The only clue Plaintiffs give the Court to indicate which, if any, affirmative statements Plaintiffs believe to be false are two emphasized phrases:

- "We remain optimistic *that the safety and efficacy data generated for the 512 RLS program will result in a favorable action by the FDA.*" (¶ 36, emphasis in complaint.)

- "[W]e continue to believe that our NDA is complete and provides ***strong evidence of the safety and** efficacy of 512* for treating moderate to severe primary RLS." (¶ 41, emphasis in complaint.)[4]

However, Plaintiffs fail to explain the significance, if any, of the bold and italicized language.

Even if Plaintiffs had explicitly alleged these statements to be false, however, such statements of optimism are mere puffery and not actionable as securities violations. *See In re Calpine Corp.*, 288 F. Supp. 2d 1054, 1088 (N.D. Cal. 2003) (holding that words such as "strong" could not "form a basis for Plaintiffs' Exchange Act claims."); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1168 (C.D. Cal. 2007) ("Statements are not actionable if they . . . constitute run-of-the-mill corporate optimism on which no reasonable investor would rely.") (internal quotations and citation omitted); *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 558

---

[4] Paragraph 48 includes a similar statement ("We believe this filing [the NDA] provides strong support for 512's efficacy and safety in treating RLS"), but, confusingly, Plaintiffs do not add any emphasis. To the extent Plaintiffs claim this statement was false, Plaintiffs fail to plead such falsity with particularity for the same reasons that Paragraphs 36 and 41 are inadequate.

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN

13.

Defendants' Notice of Motion and Motion
to Dismiss Consolidated Complaint
10-CV-3301 RMW

(S.D.N.Y. 2004) (defendants' statements that FDA approval was "likely" and "probable" are "plainly opinions, not guarantees, and are not actionable").

Moreover, the Consolidated Complaint does not "specify . . . the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). To adequately plead false statements regarding expected FDA approval of a drug, "plaintiffs must plead 'specific contemporaneous conditions' which 'strongly suggest' defendants knew the [drug] would not be approved." *Constr. Laborers Pension Trust of Greater St. Louis v. Neurocrine Biosciences, Inc.*, Case No. 07CV1111-IEG-RBB, 2008 U.S. Dist. LEXIS 38899, at *17 (S.D. Cal. May 12, 2008). In *Neurocrine*, the plaintiffs alleged the defendants' statements about their optimism of FDA approval were false and misleading because defendants had changed the dose for which they were seeking approval due to tolerance problems at higher doses, and defendants knew the data was insufficient to support approval at the lower dose. *Id.* at *4-8. The plaintiffs cited to confidential witness testimony that alleged senior managers told the executive team that there was insufficient data at the lower dose, but defendants ignored the warning. *Id.* at *6. The court dismissed the complaint, holding that these allegations lacked sufficient particularity to plead that the statements regarding FDA approval were false. The court noted that switching doses did not in itself support an inference that the statements were false. Further, the confidential witness testimony lacked the necessary corroborating detail to infer falsity. *Id.* at *15-17.

Plaintiffs' Consolidated Complaint is much more deficient than the complaint dismissed in *Neurocrine*. Nothing in the Consolidated Complaint suggests that Dr. Barrett did not sincerely believe the statements when he made them or that he otherwise knew 512 would not be approved. Without any additional allegations, Defendants' statements of belief and optimism that 512 would be approved are not actionable for securities fraud. *See id.*; *see also In re Daou Sys., Inc.*, 411 F.3d 1006, 1021-22 (9th Cir. 2005) (holding optimistic statements are not actionable absent "sufficient facts to demonstrate that defendants had actual knowledge that these optimistic statements were false and misleading when made."); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 & n.11 (9th Cir. 1996) (holding claims related to optimistic predictions about FDA approval were not actionable).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

14.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

Defendants' statements regarding the likelihood of FDA approval are inactionable for another, independent reason: they were forward-looking statements protected from fraud actions by the PSLRA's safe harbor provision.  15 U.S.C. § 78u-5(c).  Forward-looking statements are protected from securities violations if either (i) they were accompanied by warnings as forward-looking statements or (ii) the speaker did not know of or did not recklessly disregard the statements' falsity.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010).  This protection extends to statements regarding the likelihood of FDA approval or a drug's success. *Neurocrine*, 2008 U.S. Dist. LEXIS 38899, at *33 ("The statements which simply anticipate success for the [New Drug] Application are clearly forward-looking statements."); *see also In re Dura Pharms., Inc. Sec. Litig.*, 548 F. Supp. 2d 1126, 1142-43 (S.D. Cal. 2008).

Each of XenoPort's statements regarding the likelihood of FDA approval of 512 for RLS was made in the context of conference calls with analysts.  (¶¶ 36, 41).  Each of the calls began with warnings that the statements made during the call "include forward-looking statements that involve risks and uncertainties, including statements related to . . . the regulatory process" and instructed participants to "refer to the Risk Factors section of [XenoPort's] most recent SEC filings" to obtain "detailed information about the risks and uncertainties that could cause actual results to differ materially from those implied by or anticipated in these forward-looking statements."  (Exs. H, I, J, K, L).  The Risk Factors in those filings explicitly stated that "[a]ny of our product candidates could be unsuccessful if it does not demonstrate acceptable safety and efficacy in preclinical studies or clinical trials or otherwise does not meet applicable regulatory standards for approval."  (*See* Ex. S).  Additionally, as indicated above, multiple XenoPort SEC filings in 2009 clearly identified the risk that XenoPort might not obtain regulatory approval for 512.  No reasonable investor could have missed the point:

> The FDA has substantial discretion in the approval process and may refuse to approve any application or decide that our or our collaborative partners' data is insufficient for approval and require additional preclinical, clinical or other studies. For example, varying interpretations of the data obtained from preclinical and clinical testing could delay, limit or prevent regulatory approval of any of our product candidates.

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN

15.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

(Exs. N, Q.)  These warnings qualify the statements for protection under the PSLRA.  *Cutera*, 610 F.3d at 1111-12.  Thus, the statements are protected by the PSLRA's safe harbor provisions and cannot support Plaintiffs' securities fraud claims.

   **b.**  **Plaintiffs Fail To Adequately Plead That Any Statements Were Misleading Due To Allegedly Omitted Information**

     **(i)**  **Plaintiffs Fail To Establish That The Alleged Omission Rendered Any Statements By The Company Misleading**

   Some of Plaintiffs' fraud claims apparently rest on the allegation that Defendants omitted information regarding the results of 512's carcinogenicity studies.  (¶ 54.)  However, Plaintiffs fail to plead sufficient facts to support that the alleged omission of this information was misleading.  *Brody*, 280 F.3d at 1006 ("[T]o be actionable under the securities laws, an omission must be misleading; . . . it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists.")  If a statement is not false or misleading but merely incomplete, it is not actionable under the securities laws.  *See In re Computerized Thermal Imaging, Inc., Sec. Litig.*, Civ. No. 02-611-KI, 2003 U.S. Dist. LEXIS 26500, at *21 (D. Or. Apr. 17, 2003) (citing *Brody*, 280 F.3d at 1006).

   In *Computerized Thermal*, the plaintiffs alleged, among other things, that the defendants announced the first sale of its product, but failed to disclose that the purchaser would also receive stock options with each purchase worth a total of $454,000.  2003 U.S. Dist. LEXIS 26500, at *20.  The plaintiffs argued the omission regarding stock options caused the statements to be misleading because the system price was heavily discounted by the inclusion of the options.  *Id*.  Citing *Brody*, the court dismissed the complaint, holding that plaintiffs failed to allege why the omission was misleading, rather than merely incomplete.  *Id*. at *21.  Because the statement implied nothing about discounts or whether additional terms were part of the bargain, it was not misleading.  *Id*.

   Like the complaint in *Computerized Thermal*, the Consolidated Complaint fails to plead with particularity which statements were misleading or how omitting information regarding the carcinogenicity studies caused any of the statements alleged in the Complaint to be misleading.

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN

16.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

The statements cited in the Consolidated Complaint implied nothing about any carcinogenicity studies. At most the Consolidated Complaint shows the statements were incomplete, which is insufficient to state a claim. *Id.* It certainly does not plead facts demonstrating "a highly unreasonable omission, involving . . . an extreme departure from the standards of ordinary care." *Zucco*, 552 F.3d at 991 (quoting *Silicon Graphics*, 183 F.3d at 976).

### (ii)    XenoPort Disclosed The Information Plaintiffs Claim Was Omitted

More importantly, it is simply not true that XenoPort failed to publicly disclose information regarding the carcinogenicity studies to investors. To the contrary, in a conference call in May 2008, XenoPort disclosed to investors that 512's carcinogenicity studies, like the carcinogenicity studies for parent drug gabapentin, showed the expected pancreatic acinar cell tumors in Wistar rats at the highest doses. (Ex. R.)

This disclosure eviscerates Plaintiffs' omission claims. A reasonable investor would have been aware of this information. *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 703 n.4 (9th Cir. 1999) ("A reasonable investor is presumed to have information available in the public domain, and therefore . . . is imputed with constructive knowledge of this information.") (citing *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995)). Moreover, the 2008 disclosure relieves Defendants of any duty to disclose the results of the carcinogenicity studies at any later point in time, including during the Class Period. *Barth v. Novasenor*, No. C-91-0803-DLJ, 1991 U.S. Dist. LEXIS 18079, at *15 (N.D. Cal. Dec. 6, 1991) (holding there is no duty to disclose information already available to the public that is part of the total mix of information available to the reasonable investor); *Howard Gunty Profit Sharing v. Quantum Corp.*, Civ. No. 96 20711 SW, 1997 U.S. Dist. LEXIS 23532, at *13 (N.D. Cal. Aug. 14, 1997) ("As Defendants did not owe Plaintiff a duty to disclose the public information at issue, they cannot be held liable for failing to do so.").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

17.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

c.   **The Results Of Gabapentin's Carcinogenicity Studies Were Publicly Available And Well-Known To Reasonable Investors.**

In addition to the 2008 disclosure of the carcinogenicity studies, the results of carcinogenicity studies of gabapentin – 512's parent drug – were widely known in the market. Pfizer has been marketing gabapentin since 1993 under the name Neurontin.  Preclinical studies of gabapentin showed an increased incidence of pancreatic acinar cell tumors in rats.  Numerous scientific articles regarding those studies have been published in industry-related journals available to the public.  (*See, e.g.,* Ex. U.)  The first of these articles was published in the journal *Toxicology* in 1995:

> Gabapentin . . . was evaluated in a 2-year tumor bioassay in male Wistar rats. . . . There was a treatment-related increase in the number of pancreatic acinar cell carcinomas . . . . Biologically, the pancreatic carcinomas were not invasive, did not metastasize, were of late onset and did not compromise survival. Thus, gabapentin was a carcinogen in male Wistar rats. However, the tumorigenic response was of low-grade because it constituted a late tumor response which required very high doses. We reported recently that mice treated with gabapentin had no increase in pancreatic tumors. Therefore, neoplastic development was confined to the pancreas in a single sex and species of rodent. Consequently, gabapentin at therapeutic doses poses a low carcinogenic risk to humans.

(Ex. U.)

Further, FDA-approved labels for Neurontin dating back to at least 1998 also included statements regarding the results of the carcinogenicity studies.  Each of these labels stated the following:

> **Tumorigenic Potential**
>
> In standard preclinical *in vivo* lifetime carcinogenicity studies, an unexpectedly high incidence of pancreatic acinar adenocarcinomas was identified in male, but not female, rats. (See PRECAUTIONS: Carcinogenesis, Mutagenesis, Impairment of Fertility.) The clinical significance of this finding is unknown. Clinical experience during gabapentin's premarketing development provides no direct means to assess its potential for inducing tumors in humans.

(Exs. V, W.)

The widespread availability of this information undermines Plaintiffs' assertion that the statements in the Consolidated Complaint were misleading.  512 was a modification of gabapentin,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

18.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

and gabapentin's drug development was particularly relevant to the overall mix of information available to the market regarding 512. As such, a reasonable investor can be presumed to have been aware of this information. *See Berry*, 175 F.3d at 703 n.4 ("A reasonable investor is presumed to have information available in the public domain, and therefore is imputed with constructive knowledge of this information.") (citing *Whirlpool Fin. Corp.*, 67 F.3d at 610); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1126 (C.D. Cal. 2005) (holding information available through the FDA was publicly known and thus assessed by the market for effect on FDA approval); *In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 534 (E.D.N.Y. 2008) (holding investors presumed to know about "available medical research"). Due to the well-known gabapentin toxicity studies, any alleged omission of 512's carcinogenicity studies – which had essentially identical results – did not "affirmatively create an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]" during the Class Period. *Brody*, 280 F.3d at 1006. As such, the statements cited in the Consolidated Complaint were not misleading.

### 3. Plaintiffs Fail To Plead With Particularity Facts That Give Rise To A Strong Inference Of Scienter.

None of Plaintiffs' allegations, individually or collectively, give rise to a strong inference that Defendants acted with "deliberate recklessness" or "conscious misconduct." *South Ferry*, 542 F.3d at 782 (internal quotations and citations omitted). To establish "deliberate recklessness" or "conscious misconduct," a plaintiff "must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity." *Silicon Graphics*, 183 F.3d 974; *see also Ronconi*, 253 F.3d at 429. Moreover, a complaint will survive a motion to dismiss only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 127 S. Ct. at 2510. The Consolidated Complaint falls well short of these standards.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

19.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

### a.  Plaintiffs' Conclusory And Bare-Bones Allegations Of Scienter Are Plainly Insufficient.

Plaintiffs' scienter allegations consist of a single paragraph:

> As alleged herein, the Individual Defendants acted with *scienter* in that defendants knew or recklessly failed to know that the public documents and statements, issued or disseminated by or in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding XenoPort and its business practices, their control over and/or receipt of XenoPort's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning XenoPort were active and culpable participants in the fraudulent scheme alleged herein. The Individual Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

(¶ 63.)  This solitary paragraph plainly fails to adequately plead scienter.  Indeed, its is virtually identical to scienter allegations contained in at least three other securities complaints involving other companies filed by Plaintiffs' counsel.  (*See* Exs. X, Y, Z; Dec. ¶ 25.)[5]  A generic, boiler plate recitation of scienter allegations cannot, by definition, satisfy the particularity requirements of the PSLRA.

The Consolidated Complaint is entirely devoid of any allegation whatsoever regarding the Individual Defendants' mental states.  It lacks the types of allegations that Plaintiffs traditionally use to attempt to support scienter, such as confidential witness allegations, excerpts from contemporaneous documents or allegations of insider stock sales.  Though Paragraph 63 alludes to the "receipt of information reflecting true facts" it never identifies the purported information, which defendants allegedly received it, or when.  Paragraph 63 also alleges that Defendants were "privy to confidential proprietary information" but never identifies what that information is, how they obtained it, or why it is relevant.  It refers to no documents or contemporaneous statements

---

[5] These complaints are available at http://www.glancylaw.com/ongoing_cases.php.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN                20.                DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

1    contradicting the allegedly false statements.  Without any particularized facts supporting scienter,

2    the Complaint falls drastically short of PSLRA pleading requirements.  *Neurocrine*, 2008 U.S.

3    Dist. LEXIS 38899, at *32; *Wenger*, 2 F. Supp. 2d at 1244.

4         The allegations, whether taken individually or collectively, do not raise even a "cogent"

5    inference of scienter, let alone an inference "at least as compelling as any opposing inference."

6    *Tellabs*, 127 S. Ct. at 2510.  The most obvious and compelling inference one can derive from the

7    facts alleged is that XenoPort was confident that the FDA would approve the drug, and XenoPort

8    simply and honestly shared this optimism with investors.  This optimism was well-founded given

9    that 512 yielded the same carcinogenicity results as gabapentin (which received FDA approval),

10   over fifteen years of human gabapentin use showed no signs of pancreatic cancer, and 512's

11   clinical trials for treating RLS were successful.  As such, the inference that XenoPort was truly

12   optimistic about FDA approval is far more compelling than an inference of scienter.  *See*

13   *Neurocrine*, 2008 U.S. Dist. LEXIS 38899, at *29 (holding the more compelling inference was that

14   defendants "had a reasonable basis for their optimistic statements concerning the drug's efficacy,

15   quality of life and economic benefits") (internal quotations and citation omitted).

16        Having failed to provide any particularized facts supporting any inference of scienter —

17   much less a cogent and compelling one — the Consolidated Complaint should be dismissed.

### b.    The Disclosure Of 512's Carcinogenicity Studies Is Fatal To Plaintiffs' Claims As It Defeats Scienter.

20        The disclosure of 512's carcinogenicity studies in 2008 severely undermines Plaintiffs' claim

21   that Defendants were deliberately withholding information regarding the increased incidence of

22   pancreatic cell tumors in rats.  It belies common sense to argue that Defendants were knowingly and

23   fraudulently concealing information from investors that Defendants had already disclosed less than a

24   year before the start of the Class Period.   This is especially true given that each of the analyst firms on

25   the May 2008 call participated in the conference calls to which Plaintiffs cite in the Consolidated

26   Complaint to support their fraud claims.  (*Compare* Ex. R *with* Ex. H, Ex. I, Ex. J, Ex. K, Ex. L.)

27   Defendants could not have deliberately concealed information from entities to which Defendants

28   had already disclosed the very same information.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN

21.

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

1            **4.      Plaintiffs Fail To Sufficiently Allege Loss Causation.**

2        Loss causation requires "a causal connection between the material misrepresentation and

3    the loss."  *Dura*, 544 U.S. at 342.  "[A]n inflated purchase price will not itself constitute or

4    proximately cause the relevant economic loss."  *Id.*  Rather, a "substantial cause" of the loss must

5    result from investors learning the truth regarding the allegedly misrepresented facts, *Daou*

6    *Systems, Inc.*, 411 F.3d at 1025, and not from other confounding factors, such as "firm-specific

7    facts, conditions, or other events, which taken separately or together account for some or all of

8    that lower price."  *Dura*, 544 U.S. at 343.  A complaint fails to allege loss causation if it does not

9    "provide[] [a defendant] with notice of what the relevant economic loss might be or of what the

10   causal connection might be between that loss and the misrepresentation[.]"  *Metzler Inv. GMBH*

11   *v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir. 2008) (quoting *Dura*, 544 U.S. at 347).

12   Such "notice can only reasonably be interpreted to require the complaint to spell out the

13   connection between the alleged misstatement or omission and the plaintiffs' loss."  *In re Nuvelo,*

14   *Inc. Sec. Litig.*, No. C 07-4056 VRW, 2008 U.S. Dist. LEXIS 98441, at *20 (N.D. Cal. Dec. 4,

15   2008).

16       Plaintiffs' sole allegation of loss is based on the stock drop that occurred on February 18,

17   2010, the day after XenoPort announced the receipt of the Complete Response Letter.  This is

18   insufficient to allege loss causation.

19       First, the Consolidated Complaint does not make clear that the stock drop in February

20   2010 was a reaction to the revelation of safety concerns arising out of the carcinogenicity studies,

21   rather than the FDA's decision not to approve 512 at that time.  The February 17 press release

22   made the same disclosure regarding the results of the carcinogenicity studies as the May 2008

23   conference call and, at the same time, announced that the FDA had rejected XenoPort's NDA.

24   Plaintiffs fail to allege what portion, if any, of the stock drop was attributable to the alleged

25   corrective disclosure, rather than the receipt of the FDA Complete Response letter.  The

26   Consolidated Complaint fails to satisfy *Dura's* requirement of pleading loss causation.  *Nuvelo,*

27   *Inc.*, 2008 U.S. Dist. LEXIS 98441, at *22-23  (complaint inadequately pled loss causation where

28

Cooley LLP
Attorneys At Law
Palo Alto

913438 /HN                                22.                    **Defendants' Notice of Motion and Motion
to Dismiss Consolidated Complaint
10-CV-3301 RMW**

alleged corrective disclosure included previously withheld information along with announcement that clinical trials failed, and complaint did not specify the cause of the loss).

Second, XenoPort's 2008 disclosure of the results of the carcinogenicity studies severely undermines Plaintiffs' loss causation argument.   Because XenoPort in fact disclosed the information regarding the preclinical carcinogenicity studies in 2008, the omission of the studies from statements in 2009 could not have caused the loss Plaintiffs allegedly suffered when the stock dropped in February, 2010.  The market had already incorporated that information into the stock price.  *See Yanek*, 388 F. Supp. 2d at 1126 (where information was "publicly known or available . . . the market already had the necessary information to assess any impact of [that information] on FDA approval") (internal quotations and citations omitted).  It strains credulity to argue that a substantial cause of the stock drop was a reaction to information that had already been disclosed nearly two years earlier, rather than a reaction to the FDA's rejection of the NDA.

### B.   Plaintiffs Fail to State a Claim for Violation of Section 20

To establish "control person" liability pursuant to section 20(a) of the Exchange Act, Plaintiffs must show a primary violation of section 10(b) and that each defendant "directly or indirectly" controlled the violator.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 & n.8 (9th Cir. 1987), *overruled on other grounds by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990).  Plaintiffs' failure to plead a primary violation of section 10(b) requires the dismissal of this claim.  Further, even assuming a primary violation of section 10(b), Plaintiffs have not pled facts sufficient to establish control person liability.  *See Wool*, 818 F.2d at 1440.

### C.   The Consolidated Complaint Should Be Dismissed with Prejudice

"Leave to amend need not be granted when an amendment would be futile."  *Vantive Corp.*, 283 F.3d at 1097 (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (dismissal with prejudice appropriate where "any amendment would be an exercise in futility")).  Futility of amendment may be shown by plaintiff's failure to plead additional facts when given the opportunity.  *See Vantive Corp.*,  283 F.3d at 1098.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN                                      23.                      DEFENDANTS' NOTICE OF MOTION AND MOTION
TO DISMISS CONSOLIDATED COMPLAINT
10-CV-3301 RMW

1   Plaintiffs had two months after the appointment of lead plaintiff to gather facts to augment

2   the initial filed complaints.   Instead, Plaintiffs recycled a previous complaint with identical

3   allegations, and alleged not a single additional fact.  Plaintiffs have already had an opportunity to

4   amend their initial complaint.[6]   The Consolidated Complaint presumably reflects Plaintiffs' best

5   efforts to plead a cognizable claim.    They failed to do so, and need not be given an additional

6   chance. *Vantive Corp.*,  283 F.3d at 1098.  Moreover, the entire Consolidated Complaint is based

7   on the premise that XenoPort failed to disclose the results of 512's carcinogenicity studies, but

8   XenoPort in fact disclosed those results in 2008.  Any attempted amendment would be futile in

9   light of this disclosure.  As such, the Consolidated Complaint should be dismissed with prejudice.

10  **V.     CONCLUSION**

11      The Consolidated Complaint falls well short of the requirements for pleading fraud under

12  the federal securities laws.  As a result, it should be dismissed with prejudice.

13

14  Dated:  February 18, 2011                         COOLEY LLP

15

16                                              */s/ John C. Dwyer*
                                                 John C. Dwyer

17                                              Attorneys for Defendants
18                                              XENOPORT, INC., RONALD W. BARRETT,
                                                WILLIAM J. RIEFLIN, DAVID A. STAMLER,
19                                              MARK A. GALLOP and DAVID R. SAVELLO

20

21

22

23

24
_____

25  [6] On January 4, 2010, the date the Consolidated Complaint was due, lead Plaintiffs' counsel,
    Samuel Rosen of Harwood Feffer LLP, called lead Defendants' counsel, John C. Dwyer of
26  Cooley LLP.  The call lasted about one minute.  Mr. Rosen told Mr. Dwyer that Plaintiffs had
    made a mistake and thought the Consolidated Complaint was due on January 6, two days later.
27  Mr. Rosen indicated that, as a result, Plaintiffs would designate a previously filed complaint as
    the Consolidated Complaint.  Mr. Rosen never asked for an extension of time to plead additional
28  facts or for any other form of relief.  (Dec. ¶ 26.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

913438 /HN                              24.                    DEFENDANTS' NOTICE OF MOTION AND MOTION
                                                               TO DISMISS CONSOLIDATED COMPLAINT
                                                               10-CV-3301 RMW