COOLEY LLP
JOHN C. DWYER (136533) (dwyerjc@cooley.com)
JESSICA VALENZUELA SANTAMARIA (220934) ( jsantamaria@cooley.com)
ADAM TRIGG (261498) (atrigg@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:    (650) 843-5000
Facsimile:     (650) 849-7400

Attorneys for Defendants
XENOPORT, INC., RONALD W. BARRETT,
WILLIAM J. RIEFLIN, DAVID A. STAMLER
and DAVID R. SAVELLO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE XENOPORT, INC. SECURITIES LITIGATION | Case No.  CV-10-3301 RMW<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:     September 23, 2011<br>Time:    9:00 am<br>Judge:   Hon. Ronald M. Whyte |

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**
**CV-10-3301 RMW**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The FAC Fails To Plead Facts Supporting Any Inference Of Scienter .................. 2

        1. Defendants' Bonuses – Taken As Stock That Defendants Never Sold – Negate Scienter ................................................................................. 3

        2. Plaintiff's Recycled Core Operations Theory Still Does Not Establish Scienter .................................................................................... 4

        3. The Far More Compelling Inference Drawn From All The Facts Is That Defendants Did Not Act With Fraudulent Intent................................ 6

    B. Plaintiff Fails To Plead Materially Misleading Statements .................................... 9

        1. Plaintiff Fails To Plead Any False Statement ......................................... 10

        2. Plaintiff Fails To Plead A Misleading Omission ..................................... 12

    C. Plaintiff Concedes The Stock Drop Occurred Before The Alleged Corrective Disclosure ........................................................................................ 13

    D. The FAC Should Be Dismissed With Prejudice As Any Amendment Would Be Futile ................................................................................................ 14

III. CONCLUSION ............................................................................................................. 15

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

i.

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**
**CV-10-3301 RMW**

# TABLE OF AUTHORITIES

PAGE

**CASES**

*In re Allergan Inc. Sec. Litig.*,
　SACV 89-643AHS (RWR), 1993 WL 623321 (C.D. Cal. Nov. 29, 1993) .............................. 4

*In re Apple Computer Sec. Litig.*,
　886 F.2d 1109 (9th Cir. Cal. 1989) ................................................................................... 15

*In re Bare Escentuals, Inc. Sec. Litig.*,
　745 F. Supp. 2d 1052 (N.D. Cal. 2010) .............................................................................. 5

*Basic Inc. v. Levinson*,
　485 U.S. 224 (1988) .......................................................................................................... 12

*In re Cadence Design Sys., Inc. Sec. Litig.*,
　692 F. Supp. 2d 1181 (N.D. Cal. 2010) .............................................................................. 5

*In re Cell Pathways, Inc. Sec. Litig.*,
　2000 U.S. Dist. LEXIS 8584 (E.D. Pa. June 20, 2000) ..................................................... 8

*In re Downey Sec. Litig.*,
　Case No. CV 08-3261-JFW, 2009 U.S. Dist. LEXIS 83443 (C.D. Cal. Aug. 21, 2009) ......... 3

*Dura Pharm., Inc. v. Broudo*,
　544 U.S. 336 (2005) .......................................................................................................... 14

*Fort Worth Employers' Retirement Fund v. Biovail Corp.*,
　615 F. Supp. 2d 218 (S.D.N.Y. 2009) ..................................................................... 6, 7, 13

*In re Genta, Inc. Sec. Litig.*,
　2005 U.S. Dist. LEXIS 22857 (D.N.J. Sept. 30, 2005) ..................................................... 8

*In re Hansen Natural Corp. Sec. Litig.*,
　527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................................ 15

*In re Impax Labs., Inc. Sec. Litig.*,
　No. C 04-04802 JW, 2007 WL 7022753 (N.D. Cal. July 18, 2007) .................................. 5

*In re LeapFrog Enters., Inc. Sec. Litig.*,
　527 F. Supp. 2d 1033 (N.D. Cal. 2007) ............................................................................ 14

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
　513 F.3d 702 (7th Cir. 2008) .......................................................................................... 5, 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
　540 F.3d 1049 (9th Cir. 2008) ......................................................................................... 14

# TABLE OF AUTHORITIES
## (CONTINUED)

**PAGE**

*In re Nvidia Corp. Sec. Litig.*,
  Case No. 08-CV-04260-RS, 2010 U.S. Dist. LEXIS 114230 (N.D. Cal. Oct. 19, 2010).........5

*In re PLC Sys., Inc. Sec. Litig.*,
  41 F. Supp. 2d 106 (D. Mass. 1999) ................................................................................ 13

*Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group*,
  717 F. Supp. 2d 1170 (E.D. Wash. 2010) .......................................................................... 5

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D. Pa. 2009) ............................................................................... 15

*In re Regeneron Pharm., Inc. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 1350 (S.D.N.Y. Feb. 1, 2005) ...................................................... 8

*Schneider v. Calif. Dep't of Corrections*,
  151 F.3d 1194 (9th Cir. 1998) ......................................................................................... 12

*South Ferry LP, #2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ......................................................................................... 4, 5

*In re Sun Microsystems Sec. Litig.*,
  1992 U.S. Dist. LEXIS 13009 (N.D. Cal. July 10, 1992) ................................................ 15

*In re Syncor Int'l Corp. Sec. Litig.*,
  239 F. App'x 318 (9th Cir. 2007) ...................................................................................... 3

*In re Vantive Corp Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) .................................................................................... 14, 15

*In re Visx, Inc. Sec. Litig.*,
  No. C 00-0649, 00-0845, 00-0765, 00-0815, 00-0913 CRB, 2001 U.S. Dist. LEXIS
  2152 (N.D. Cal. Feb. 27, 2001) ....................................................................................... 15

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ........................................................................... 14

*Zack v. Allied Waste Indus., Inc.*,
  No. CIV04-1640PHXMHM, 2005 WL 3501414 (D. Ariz. Dec. 15, 2005), *aff'd*, 275
  F. App'x 722 (9th Cir. 2008) ............................................................................................. 4

*Zucco Partners, LLC v. Digimarc Corp.*,
  No. 06-35758, 2009 U.S. App. LEXIS 7025 (9th Cir. Feb. 10, 2009) ..................... 5, 7, 13

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

iii.

**DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW**

# Table Of Authorities
## (Continued)

PAGE

**Statutes**

Securities Exchange Act of 1934
 § 10(b) .................................................................................................................. 2

Cooley LLP
Attorneys At Law
Palo Alto

971850 v4/HN

iv.

**Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss
CV-10-3301 RMW**

## I. INTRODUCTION

Plaintiff continues in the Opposition to change his theory of liability against the Defendants. First, in the Consolidated Complaint, Plaintiff alleged XenoPort never disclosed *Horizant's* carcinogenicity results. When XenoPort moved to dismiss the Consolidated Complaint and demonstrated that XenoPort did in fact disclose the carcinogenicity results, Plaintiff changed his theory in the First Amended Complaint ("FAC") to allege that, while XenoPort disclosed the results, it falsely stated that the carcinogenicity results were "very similar if not identical" to gabapentin's. In their Motion to Dismiss the FAC ("Motion to Dismiss" or "MTD"), Defendants again demonstrated that Plaintiff's allegations do not support his theory. Now, in the Opposition to the Motion to Dismiss ("Opposition" or "Opp."), Plaintiff again shifts his theory of liability to claim that while the statement was true, it was still misleading. He also misconstrues the statement to claim that Dr. Barrett said the drugs were "virtually identical." No matter how Plaintiff attempts to frame the theory, the facts alleged simply do not support a claim for fraud against the Defendants.

The Court need look no further than Plaintiff's scienter allegations. Rather than support an inference of scienter, the fact that Defendants took bonuses in stock rather than cash, then never sold the stock, undermines any inference of fraudulent intent, and actually supports an opposite inference. The Opposition has no response to this dispositive fact.

Nor does the Opposition adequately respond to the facts identified in the Motion to Dismiss that demonstrate Dr. Barrett's statement was in fact true. XenoPort's preclinical testing of *Horizant* showed a safety profile that was very similar to gabapentin. In fact, it was because the carcinogenicity for both drugs were similar – yet their perceived benefits to treat different medical indications were not – that led to the Food and Drug Administration's ("FDA") initial rejection of *Horizant*. Cancer in female rats had nothing to do with the rejection. Moreover, the FDA eventually approved *Horizant* once it became comfortable with *Horizant's* risk/benefit analysis for Restless Legs Syndrome ("RLS") without any additional studies or information about female rats. Quite simply, at every step of the way, the FDA's actions confirm that Dr. Barrett's description of *Horizant's* pre-clinical safety profile was not misleading.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

1.

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

The Opposition also has no response to another deficiency that on its own warrants dismissal of the FAC: the drop in XenoPort stock price occurred *before* the alleged revelation to the public about the carcinogenicity results in female rats. Plaintiff does not contest this fact because he cannot. Rather, Plaintiff weakly asserts that the information about female rats could have leaked to the public before the drop in stock. Without any allegations to support this story, this imaginary leak cannot save Plaintiff's deficient loss causation claim.

Plaintiff has had multiple opportunities to adequately allege a claim against the Defendants for securities fraud. He has failed to do so on each occasion. Moreover, Plaintiff has not presented any facts that can remedy the deficiencies in the FAC. Because further amendment would be futile, Defendants respectfully request that the Court dismiss the FAC with prejudice.

## II. ARGUMENT

The FAC fails on multiple fronts to allege violations of section 10(b) of the Securities Exchange Act of 1934. It is devoid of facts to support any inference of scienter, let alone an inference as cogent and compelling as the competing inference that the Defendants acted in good faith. That the Individual Defendants agreed to accept their 2008 bonuses in the form of stock, rather than cash, and then held that stock throughout the class period renders any inference of scienter implausible. Plaintiff also fails to adequately plead that any of the Defendants made a false statement. Conceding that the safety profiles of *Horizant* and gabapentin were "similar," Plaintiff now asserts that describing the safety profiles as "very similar if not identical" was somehow misleading. (Opp. at 14:13-15.) It is difficult to imagine a fraud claim based on such linguistic parsing. In any event, Plaintiff fails to adequately allege such a claim here. Finally, the FAC fails to plead loss causation as the undisputed facts show that the drop in XenoPort's stock price occurred after XenoPort announced it had received the Complete Response Letter ("CRL") and *before* any allegedly corrective disclosure regarding the female rat carcinogenicity results. Each of these deficiencies provides a distinct ground for the Court to dismiss the FAC.

### A. The FAC Fails To Plead Facts Supporting Any Inference Of Scienter

Plaintiff's scienter allegations are woefully deficient. The FAC relies almost exclusively on the Individual Defendants' 2008 bonuses to support scienter, but the Individual Defendants

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN         2.         DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

agreed to take these bonuses in stock, then never sold any of it. These facts completely negate scienter. Plaintiff's belated attempt to rely on the "core operations" theory to support scienter also fails, as the theory is inapplicable here.

### 1. Defendants' Bonuses – Taken As Stock That Defendants Never Sold – Negate Scienter

Plaintiff continues to maintain that scienter is demonstrated by the allegation that Defendants were motivated to fraudulently inflate XenoPort's stock price to ensure the successful completion of a secondary stock offering so they could earn higher 2008 bonuses. (Opp. at 16-17.) Even if bonuses generally support scienter, which they do not[1], these specific bonuses actually undermine any inference of scienter. Although the FAC ignores that the Individual Defendants agreed to accept the bonuses in the form of stock rather than cash, Plaintiff's Opposition essentially concedes this fact. However, Plaintiff argues that it does not matter as the bonuses were the "functional equivalent of cash" because "[t]he bonus shares issued were fully vested and therefore saleable by the Individual Defendants immediately upon issuance." (Opp. at 16-17.) If the Defendants immediately sold the bonus stock (thus turning it into cash) after receiving it, Plaintiff would be right. However, Plaintiff ignores a crucial fact: ***the Individual Defendants never sold these shares***.[2] The bonus grants were thus the functional equivalent, to use Plaintiff's language, of a cash award that Defendants then used to purchase shares of XenoPort stock at an allegedly inflated price. As discussed in the Motion to Dismiss, courts in the Ninth Circuit regularly hold that the purchase of a company's stock by defendants is strong

---

[1] As noted in Defendants' Motion to Dismiss – and not challenged in Plaintiff's Opposition – courts regularly hold that bonuses have limited value in supporting scienter. *See, e.g., In re Syncor Int'l Corp. Sec. Litig.*, 239 F. App'x 318, 321 (9th Cir. 2007) ("[B]onuses are common and have limited probative value as to scienter."); *In re Downey Sec. Litig.*, Case No. CV 08-3261-JFW (RZx), 2009 U.S. Dist. LEXIS 83443, at *41-42 (C.D. Cal. Aug. 21, 2009) (holding bonuses did not support scienter where complaint made no comparison to prior bonuses and company's performance was only one of three factors considered in determining executive bonuses).

[2] Though not alleged in the FAC, Plaintiff attempts to rely on a sale of XenoPort stock David Savello allegedly made in May 2008, nearly a year before the Individual Defendants received the bonuses alleged in the FAC. (Opp. at 14, n.6.) Plaintiff's attempt to expand the allegations in the FAC through judicial notice is improper and should be rejected by the Court. *See* Defendants' Opposition to Plaintiff's Request for Judicial Notice, filed herewith, at 1-2.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN                3.                DEFENDANTS' REPLY TO PLAINTIFF'S
                                               OPPOSITION TO MOTION TO DISMISS
                                               CV-10-3301 RMW

evidence of a lack of scienter. *See Zack v. Allied Waste Indus., Inc.*, No. CIV04-1640PHXMHM, 2005 WL 3501414, at *14 (D. Ariz. Dec. 15, 2005), *aff'd*, 275 F. App'x 722 (9th Cir. 2008) (purchases during class period are "not actions demonstrating an intent to commit fraud, and instead gives rise to an inference of good faith"); *In re Allergan Inc. Sec. Litig.*, SACV 89-643AHS (RWR),1993 WL 623321, at *22 (C.D. Cal. Nov. 29, 1993) (investments during class period rendered plaintiff's fraud claims implausible).

Plaintiff would have the Court believe that the Defendants entered into an elaborate scheme to engage in fraud by claiming *Horizant's* results were "very similar if not identical" to gabapentin when they knew they were only "similar," thereby driving up the Company's stock price, and then agreed to take their bonuses in stock they knew to be overpriced. Then, the Defendants apparently forgot to sell the bonus shares, making them some of the most inept fraudsters in the history of the stock market. The theory is simply not plausible. Rather, the Individual Defendants' conduct is far more consistent with an inference that they held an honest belief in the strength of XenoPort's business prospects. This belief was ultimately confirmed when the FDA approved *Horizant*.

### 2. Plaintiff's Recycled Core Operations Theory Still Does Not Establish Scienter

In an attempt to salvage its deficient scienter allegations, Plaintiff argues that *Horizant's* importance and XenoPort's small size support scienter for each Individual Defendant. (Opp. at 19-20.) Plaintiff made the same "core operations" argument with respect to the Consolidated Complaint (using what appears to be identical language in his Opposition to the first motion to dismiss). The Court rejected that argument and should reject it here as well.

The Ninth Circuit has held that the "core operations" inference, by itself, is insufficient to allege scienter under the PSLRA: "Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of the PSLRA standard." *South Ferry LP, #2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). Rather, "core operations" allegations, such as the role of individual defendants and the importance of a product or customer,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN 4.

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

*must* be accompanied by "some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter." *Id.* at 785. Here, Plaintiff has not alleged a single fact to bolster the core operations inference.

In contrast, the cases Plaintiff cites in support of the core operations theory all included additional particularized allegations of scienter. *See Plumbers Union Local No. 12 Pension Fund v. Ambassador's Group,* 717 F. Supp. 2d 1170 (E.D. Wash. 2010) (finding scienter based on confidential witness allegations and suspicious stock sales by two defendants when other employees were instructed not to exercise options); *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181 (N.D. Cal. 2010) (finding scienter based on specific allegations by eight confidential witnesses that defendants negotiated contracts so they could "count this deal as revenue" in a particular quarter, leading to improper revenue recognition and a restatement); *In re Impax Labs., Inc. Sec. Litig.*, No. C 04-04802 JW, 2007 WL 7022753 (N.D. Cal. July 18, 2007) (finding scienter based on GAAP violations, resignations of the CFO and the CEO, and a corporate reshuffling at the time that earnings were restated because of false reports of revenues from the company's main product); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008) (finding scienter based on allegations from 26 confidential witnesses corroborated by "multiple sources"). These cases do not support Plaintiff's core operations theory.

The core operations inference may be sufficient by itself to satisfy scienter, without additional particularized allegations of intent, only where the falsity of the alleged statement is "patently obvious." *Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 2009 U.S. App. LEXIS 7025, at *46 (9th Cir. Feb. 10, 2009). Where a complaint does not "sufficiently alleg[e] actual falsity, then, plaintiffs cannot rely on the concept of core operations to infer scienter." *In re Nvidia Corp. Sec. Litig.*, Case No. 08-CV-04260-RS, 2010 U.S. Dist. LEXIS 114230, at *37-39 (N.D. Cal. Oct. 19, 2010). *See also In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1078 (N.D. Cal. 2010) (finding core operations inference insufficient to allege scienter where there were "insufficient facts to detail the falsity of this claim with particularity — let alone to establish that the falsity was 'patently obvious'"). This case does not present that type of "exceedingly rare" situation. *South Ferry*, 542 F.3d at 785 n.3. As demonstrated in the Motion to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN                              5.

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

1  Dismiss, Plaintiff does not adequately allege that any of Defendants' statements were false at all, 2 let alone so false as to be "patently obvious." Indeed, Plaintiff now concedes that "there may 3 have been some truth to claiming 'similarity' between gabapentin and *Horizant's* safety profiles," 4 but asserts that describing them as "very similar if not identical" was misleading. (Opp. at 14.) 5 Such distinctions fall short of being "patently obvious." Furthermore, XenoPort's statements 6 regarding the similarity of *Horizant's* and gabapentin's safety profiles were validated by the FDA 7 itself, which stated that "similar [carcinogenicity] findings were known at the time of our 8 approval of gabapentin…." (MTD Ex. L at 2.)

9  Finally, any inference to be drawn from the "core operations" allegations must still be 10 weighed against other plausible inferences. *See e.g., Makor Issues & Rights, Ltd.*, 513 F.3d at 11 710-11 (discussing whether plaintiff's corporate scienter allegations were cogent and compelling 12 compared to other inferences). Plaintiff would have the Court infer that Dr. Barrett intentionally 13 misled investors by describing *Horizant's* safety profile as "very similar if not identical" to 14 gabapentin's, rather than just "similar," in order to conceal results of tests that neither he nor the 15 FDA considered problematic and to drive up the value of his XenoPort stock, which he never 16 sold. It simply makes no sense. The far more compelling inference is that Defendants acted in 17 good faith without any intent to defraud the market.

### 3. The Far More Compelling Inference Drawn From All The Facts Is That Defendants Did Not Act With Fraudulent Intent

20  The allegations contained in the FAC and the judicially noticeable facts are far more 21 consistent with the inference that Defendants acted in good faith rather than with fraudulent 22 intent. Indeed, in *Biovail*, a case with remarkably similar facts, the court found no compelling 23 inference of scienter. *Fort Worth Employers' Retirement Fund v. Biovail Corp.*, 615 F. Supp. 2d 24 218, 227-28 (S.D.N.Y. 2009). As in *Biovail*, here the FAC contains no allegations that the FDA 25 ever expressed concern about the preclinical rat studies before it issued the CRL, FDA regulations 26 demonstrated that *Horizant* could be approved regardless of the results in female rats, the FDA 27 ultimately approved *Horizant* without requiring additional studies relating to female rats, and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN                           6.                      DEFENDANTS' REPLY TO PLAINTIFF'S
                                                               OPPOSITION TO MOTION TO DISMISS
                                                               CV-10-3301 RMW

there is no evidence that the Defendants benefitted from the alleged fraud.[3] *Id.* at 226-28. *Biovail's* only difference is that the FDA initially rejected the drug there because of the allegedly omitted information, but here the FDA's delay in approving *Horizant* had nothing to do with female rat carcinogenicity.

Despite the obvious similarities, Plaintiff tries to distinguish *Biovail* because of "factual questions" as to whether XenoPort included studies regarding female rats in its resubmission and whether the FDA's safety-margin guidance applies to *pre*-cancerous lesions in female rats. (Opp. at 17-18.) These purported distinctions are unavailing. The FAC alleges nothing about female rat studies in the resubmission or the safety margin for pre-cancerous hyperplasia in female rats. Yet, Plaintiff contends that the resubmission *may have* included tests on female rats and that the safety margin for precancerous hyperplasia *could have* affected the New Drug Application ("NDA"). Plaintiff cannot use the lack of allegations to create "factual questions" where there are none. Plaintiff has the burden to plead facts sufficient to establish a strong inference of scienter and has failed to do so.

Moreover, the record ***does*** demonstrate that no female rat studies were included in the resubmission and that pre-cancerous hyperplasia was not the reason for the FDA's initial failure to approve the drug. Defendants have asked for, and Plaintiff does not oppose, judicial notice of the FDA documents that discuss XenoPort's resubmission. The FDA's internal Pharmacology Review memorandum discusses all of the arguments XenoPort made in the resubmission and the supporting tests, and nowhere does it indicate there was any additional information submitted regarding female rats. (Ex. O at 3.) Further, the FDA materials make clear that hyperplasia in female rats had nothing to do with *Horizant's* initial rejection. (*See* MTD at 17-19; Ex L.) As these are facts subject to judicial notice, the Court may consider them in deciding this motion to dismiss. *Zucco Partners*, 552 F.3d at 989.

---

[3] While Plaintiff claims the FAC alleges "with great particularity the personal benefits Defendants stood to reap from misleading the public," the only such allegations relate to Defendants' bonuses, which, as explained, actually negate an inference of scienter. (Opp. at 17.)

971850 v4/HN     7.     **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CV-10-3301 RMW**

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1    The cases outside this Circuit on which Plaintiff relies do not support Plaintiff's scienter
2    theory.  (Opp. at 14-15, 18-19.)  In all three cases, scienter was established because the
3    defendants were aware of problems with their drug candidates that threatened the drugs' success,
4    the known problems contradicted the defendants' statements about the drugs, and these problems
5    eventually resulted in the FDA refusing to approve the drugs for commercial sale.  *In re Cell*
6    *Pathways, Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 8584, at *21-22 (E.D. Pa. June 20, 2000)
7    (finding scienter where defendants made positive statements regarding a clinical trial they knew
8    was flawed, the flaws led to the trial's failure, and "without any basis for confidence in the study,
9    [defendant] could not truthfully claim . . . that it could produce data that could lead to an NDA
10   filing or FDA approval"); *In re Regeneron Pharm., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 1350,
11   at *69-70 (S.D.N.Y. Feb. 1, 2005) (finding scienter where defendants concealed drug's "antibody
12   problem" knowing it "threatened the success" of the drug, and the drug failed to receive
13   approval); *In re Genta, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 22857, at *16-17 (D.N.J. Sept. 30,
14   2005) (finding scienter where defendant stated clinical trial results did not show serious adverse
15   reactions when they were aware of such reactions, and those reactions led to the FDA's refusal to
16   approve the drug).  Such allegations are not present here.  Furthermore, the results of the
17   carcinogenicity studies on female rats did not contradict Dr. Barrett's statement about *Horizant's*
18   overall safety profile.  As described more fully in the Motion to Dismiss and in section B.1.
19   below, *Horizant's* safety profile – which consisted of many tests in addition to the carcinogenicity
20   test in rats – was very similar to gabapentin, and, in fact, reflected better carcinogenicity results in
21   male rats than gabapentin.  Moreover, even if limited to the carcinogenicity tests, the FDA agreed
22   that "similar findings were known at the time of our approval of gabapentin." (Ex. L.)  Finally,
23   and perhaps most importantly, the female rat results did *not* cause the FDA to issue its CRL.
24   Rather, the FDA initially rejected *Horizant* because of the carcinoma findings in *male* rats.  Each
25   of these facts undermine Plaintiff's scienter argument.

26   When the rhetoric about hammers and nails is stripped away, the Court is left with the
27   following allegations: (1) *Horizant's* safety profile included many tests that yielded comparable
28   results to gabapentin's tests, including the carcinogenicity study in rats that resulted in a safety

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN                                    8.                            DEFENDANTS' REPLY TO PLAINTIFF'S
                                                                              OPPOSITION TO MOTION TO DISMISS
                                                                              CV-10-3301 RMW

margin of 8 times in male rats (compared to 6.5 times for gabapentin) and one carcinoma in a female rat at an exposure level more than three times the highest exposure level in the historical gabapentin studies; (2) when asked to compare the safety profiles, Dr. Barrett accurately summarized gabapentin's test results and stated that *Horizant's* "safety profile is very similar if not identical to gabapentin"; (3) the FDA issued a CRL to XenoPort because "the 8-fold margin for the 600 mg daily dose, based on the finding of pancreatic carcinoma in the *male* rat, is unacceptably low"; (4) the FDA acknowledged in the CRL that "similar findings were known at the time of our approval of gabapentin"; (5) the FDA approved *Horizant* after a resubmission that did not include any new tests on female rats; (6) during the Class Period, the Individual Defendants agreed to take their bonuses in stock rather than cash; and (7) the FAC does not allege that the Individual Defendants sold any of the bonus stock (or any other XenoPort stock) during the Class Period.  There are no allegations demonstrating that XenoPort was concerned about the female rat results, that those results affected the NDA in any way, or that the Individual Defendants derived any benefit from the alleged fraud.  The only cogent and compelling inference from these facts is that the Individual Defendants believed that *Horizant* would be approved by the FDA and acted accordingly.  They were, of course, right.  The facts simply do not support any inference of fraudulent intent.

### B.      Plaintiff Fails To Plead Materially Misleading Statements

Plaintiff's entire fraud theory rests on the alleged falsity of Dr. Barrett's statement that *Horizant's* and gabapentin's safety profiles were "very similar if not identical."[4]  Defendants' Motion to Dismiss demonstrates that the safety profiles of the two drugs were indeed comparable, and the FDA agreed that the carcinogenicity results for the two drugs had "similar findings." Confronted with these facts, Plaintiff concedes that the profiles were "similar" but argues feebly that the statement was still misleading.  The FAC fails to allege facts supporting this theory.

---

[4] Like the FAC, Plaintiff's Opposition makes vague references to the "invasiveness" and "no-effect dose" of the *Horizant* study, but the FAC never alleges any facts to support that these aspects of the study rendered any statements to be false, that these aspects were material, that they affected the FDA's decision regarding *Horizant's* NDA, or that the revelation of these facts caused XenoPort's stock drop.  Put simply, Plaintiff does not allege particularized facts to demonstrate why these allegedly concealed facts support Plaintiff's fraud claim.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN                          9.                DEFENDANTS' REPLY TO PLAINTIFF'S
                                                        OPPOSITION TO MOTION TO DISMISS
                                                        CV-10-3301 RMW

### 1. Plaintiff Fails To Plead Any False Statement

Conceding that *Horizant's* safety profile was indeed "similar" to gabapentin's, Plaintiff's Opposition makes a final desperate attempt to argue that Dr. Barrett's statement was false by claiming that, though the safety profiles were "similar," it was misleading to say they were "very similar if not identical." (Opp. at 12-14.) Even if this were a meaningful distinction, Plaintiff has not adequately alleged that the results were not "very similar" as Dr. Barrett stated. (*See* MTD at 17.) When viewing Dr. Barrett's statement in context along with the judicially noticeable facts regarding the pre-clinical testing for *Horizant* and gabapentin, its accuracy is clear.

In responding to a request for "a summary of the long-term tox studies of gabapentin … and also an update potentially on your long-term tox studies for the [*Horizant*] compound," Dr. Barrett began by describing the preclinical studies of gabapentin:

> With regard to gabapentin, this is a molecule that has a remarkable preclinical safety profile. Doses in the studies with gabapentin went up to 2 grams per day in rodents and also a very high level in the monkey studies, and really the only chronic toxicology finding that was in those studies was hyaline droplet formation in the kidneys that led to kidney damage. And that's a known effect of molecules in the chemical structure class of gabapentin, where the drug binds the alpha-2-microglobulin and forms these droplets in the kidneys. That is a male Wistar rate [sic] phenomenon. It doesn't occur in other species and has been deemed to be not relevant to human toxicology.
>
> In terms of carcinogenicity, the one finding in the gabapentin studies was pancreatic acinar cell tumors in male Wistar rates [sic] at the highest dose. And, again, the work was done to get the FDA comfortable that this did not represent a significant risk to humans. It was found only in rats, only in male rats, and not in other -- in mice.

(MTD Ex. C at 6-7.) Dr. Barrett then discussed the preclinical findings regarding *Horizant*:

> With regard to our package [for *Horizant*], we've done a full clinical or preclinical safety package that included long-term tox as well as two-year carcinogenicity studies in two species. And what we've indicated is that the safety profile [of *Horizant*] is very similar if not identical to gabapentin, that we have not uncovered any issues that we believe will affect the NDA timing nor the probability of successful NDA approval from the preclinical tox side.

(*Id.* at 7.) When viewed in context, it is clear that Dr. Barrett is discussing the full pre-clinical safety package of the two drugs, not just the carcinogenicity studies in rats, as Plaintiff argues. The FAC contains no allegations regarding other pre-clinical studies making up the full pre-

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

10.

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

clinical safety package and, thus, provides no point of reference for comparison.

Further, even if the Court were to narrowly construe Dr. Barrett's statement as limited to the rat carcinogenicity studies, the statement is still true. The rat studies for both gabapentin and *Horizant* resulted in the development of pancreatic acinar tumors in male Wistar rats at high doses. However, fewer male rats in the *Horizant* study developed tumors than male rats in the gabapentin studies at similar exposure levels, resulting in a higher safety margin for *Horizant* (8 times) than for gabapentin (6.5 times). The few female rats developing tumors in the *Horizant* study were exposed to three times the levels of gabapentin as those who received the highest dose in the historical gabapentin studies. (MTD Ex. O at Table 17.) That is, no rats in the historical gabapentin studies – male or female – received gabapentin at doses even one-half that level. Further, the resulting safety margin for female rats was higher than the FDA's guidance for relevance in humans. (MTD Ex. N.) Thus, while there were some differences in the study results, similar exposures of *Horizant* and gabapentin produced similar results for both male and female rats.

Indeed, it was these *similarities* in the carcinogenicity studies that led to the FDA's initial rejection of *Horizant*. The CRL explained that the "the 8-fold [safety] margin . . . based on the finding of pancreatic carcinoma in the ***male rat***, is unacceptably low" to warrant approval. (MTD Ex. L at 2 (emphasis added).) Thus, the FDA issued the CRL because of the tumors in ***male*** rats:

> **We acknowledge that similar findings were known at the time of our approval of gabapentin, a closely related drug, for the treatment of refractory epilepsy.** We believed at the time, and continue to believe, that the seriousness and severity of refractory epilepsy, and the benefit afforded these patients, justified the potential risk of pancreatic cancer. Although patients with RLS have very significant symptoms, it is our view that the seriousness of the condition is not sufficient to justify this risk.

(Ex. L at 2 (emphasis added).) Though the carcinogenicity results were "similar," it was the ***benefit*** to be derived from *Horizant* that concerned the FDA, and it determined that the treatment of RLS did not warrant approval at that time.

Perhaps recognizing the futility of relying on the "similar" versus "very similar if not identical" distinction, Plaintiff attempts to misconstrue Dr. Barrett's words to mean that *Horizant* was "virtually identical" to gabapentin (Opp. at 4, 6, 12, 15, 16, 21) and that "Dr. Barrett stated

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

11.

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

carcinoma only occurred in male rats" (Opp. at 2, 4, 12, 15). Dr. Barrett made no such statements. As demonstrated above and in the Motion to Dismiss, the statement Dr. Barrett did make was true, and the FAC fails to allege otherwise.[5]

### 2. Plaintiff Fails To Plead A Misleading Omission

Implicitly recognizing that Dr. Barrett's statement was in fact true, Plaintiff next asserts that even if the statement was literally true, it was misleading because it omitted material information that a few female rats at high exposure rates developed tumors. (Opp. at 13-14.) This argument fails for several reasons.

First, the FAC does not allege an omission theory regarding Dr. Barrett's May 7, 2008 statement.[6] Rather, Plaintiff repeatedly alleged that the statement was "false." (¶¶ 3, 28, 33.) This new theory of liability in the Opposition is improper, and the Court should not consider it. *See Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Second, even if Plaintiff had properly alleged that Dr. Barrett's May 7, 2008 statement was true, but somehow materially misleading, such a theory is not supported by the allegations. As explained in the Motion to Dismiss, the female rat results were immaterial. The omission of a fact will render a statement materially misleading only where there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (internal quotations and citation omitted). When

---

[5] Because the FAC was unclear as to whether it was challenging Dr. Barrett's statement that "we have not uncovered any issues that we believe will affect the NDA timing nor the probability of successful NDA approval from the preclinical tox side," Defendants' MTD argued that this statement was not false. (MTD at 21-22). Plaintiff has conceded this issue by failing to address any of these arguments in his Opposition.

[6] The FAC implies that subsequent public statements improperly omitted information regarding the female rat results. (¶¶ 32, 34). Defendants challenged the sufficiency of those allegations. (MTD at 22-23.) Plaintiff's Opposition does not respond to these challenges, thereby conceding the insufficiency of the claims.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN

12.

DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

1  determining whether facts regarding a company's drug candidate are important to a reasonable
2  investor, the court can consider the relevance of the information to the FDA's decision-making
3  process.  *See Biovail*, 615 F. Supp. 2d at 231 (finding information immaterial where it is not
4  likely to affect NDA timing or approval).  Here, the carcinogenicity results for female rats had no
5  effect on the FDA's timing or approval of the NDA; rather, it was cancer in *male* rats that initially
6  concerned the FDA and led to the issuance of the CRL.  (MTD Ex. L.)  In fact, the FDA
7  calculated the safety margin for female rats at 28 times, well in excess of the 25-fold baseline for
8  relevance in humans.  (MTD Exs. N at 4; R at n.11.)  Further, the FDA ultimately approved the
9  drug without any additional information regarding the female rats.  Because the female rat results
10 had no influence on the FDA's decision to issue the CRL, a reasonable investor would not have
11 considered the results to significantly alter the total mix of information available.  *Biovail*, 615 F.
12 Supp. 2d at 231; *In re PLC Sys., Inc. Sec. Litig.*, 41 F. Supp. 2d 106, 120 (D. Mass. 1999)
13 (holding undisclosed fact immaterial where fact "might interest a medical researcher, but would
14 not be an influential factor in making an investment decision").

15       Finally, Dr. Barrett's statement was simply not misleading.  As described above, the pre-
16 clinical safety packages of gabapentin and *Horizant* included similar tests with nearly identical
17 results.  The FDA acknowledged these "similar findings."  (Ex. L.)  The one difference Plaintiff
18 touts – tumors in female rats at an extremely high exposure level – was not considered by the
19 FDA to be important.  To adequately plead a material omission, "[P]laintiff must plead 'a highly
20 unreasonable omission, involving not merely simple, or even inexcusable negligence, but an
21 extreme departure from the standards of ordinary care.'"  *Zucco*, 552 F.3d at 991.  Given the
22 nearly identical carcinogenicity results and the irrelevance of the female rat results to *Horizant's*
23 prospects for approval, Dr. Barrett's statement regarding the safety profiles of gabapentin and
24 *Horizant* was not misleading at all, let alone so "extreme" as to render it fraudulent.

25       **C.     Plaintiff Concedes The Stock Drop Occurred Before The Alleged Corrective
26             Disclosure**

27       Exhibits Q and P to Defendants' Motion to Dismiss demonstrate that XenoPort's stock
28 price dropped *before* the February 18 conference call in which the carcinogenicity results in

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN                                    13.                    DEFENDANTS' REPLY TO PLAINTIFF'S
                                                                       OPPOSITION TO MOTION TO DISMISS
                                                                       CV-10-3301 RMW

female rats were discussed. Plaintiff does not challenge this fact. Instead, Plaintiff maintains "[i]t is plausible that the contents of the letter leaked" before the stock drop. (Opp. at 21.) But Plaintiff has not alleged such a leak. Concocting a hypothetical story to rebut undisputed facts exposing a fatal flaw in Plaintiff's loss causation theory cannot remedy the deficient FAC. The uncontested facts demonstrate that the stock dropped prior to the alleged corrective disclosure, and the FAC has failed to plead "a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342 (2005). Where, as here, the allegations before the Court do not adequately allege loss causation, the complaint should be dismissed as a matter of law. *See In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1040-41 (N.D. Cal. 2007) ("To establish loss causation plaintiffs must show that the stock price dropped after the truth was 'revealed.'"); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065 n.9 (9th Cir. 2008) ("[L]oss causation cannot be alleged by referring to a drop in a stock price that occurs prior to the revelation of the alleged truth.").

### D. The FAC Should Be Dismissed With Prejudice As Any Amendment Would Be Futile

"Leave to amend need not be granted when an amendment would be futile." *In re Vantive Corp Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002). Plaintiff has now had several chances to adequately plead securities fraud, but has failed to do so. As described above, the FAC remains deficient as to scienter, falsity, and loss causation. Plaintiff has not indicated any additional facts that could possibly fix the FAC's multiple failures.[7] He is unlikely to be able to do so given that

---

[7] The allegations outside the FAC that Plaintiff asserts for the first time in the Opposition – Dr. Savello's alleged stock sales (Opp. at p. 14 n. 6) and Dr. Barrett's and Dr. Savello's alleged "dispositions of XenoPort shares" (Opp. at p. 17 n. 9) – will not remedy the FAC's deficiencies. If alleged, Dr. Savello's stock sales would be the only allegation of any sales and the only substantive allegations against Dr. Savello at all, and therefore would not support scienter. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (finding allegation that one defendant sold holdings insufficient, noting "[w]e typically require larger sales amounts—and corroborative sales by other defendants—to allow insider trading to support scienter"); *see also In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1157 (C.D. Cal. 2007) (PSLRA requires scienter allegations be made "separately for each alleged misrepresentation and each defendant"). Likewise, the alleged "dispositions" of stock were simply shares withheld to pay taxes on stock grants. Transaction Code "F" on the Form 4s denotes a "payment of exercise price or tax liability by delivering or withholding securities incident to the receipt, exercise or

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN　　14.　　DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW

1   the FAC relies entirely on publicly available documents and not on any confidential witnesses or
2   former employees. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1163 (C.D.
3   Cal. 2007) (denying leave to amend where exclusive reliance on publicly available documents
4   made it "difficult to imagine what additional facts Plaintiff could allege to satisfy the strict
5   pleading requirement of the PSLRA"). Indeed, Plaintiff does not even request leave to amend.
6   Without any additional facts that could fix the deficiencies in pleading scienter, falsity, and loss
7   causation, any amendment would be futile and the Court should dismiss the FAC with prejudice.
8   *See Vantive*, 283 F.3d at 1098 (holding futility of amendment may be shown where plaintiff fails
9   to plead additional facts when given the opportunity); *In re Visx, Inc. Sec. Litig.*, No. C 00-0649,
10  00-0845, 00-0765, 00-0815, 00-0913 CRB, 2001 U.S. Dist. LEXIS 2152, at *31-32 (N.D. Cal.
11  Feb. 27, 2001) (dismissing complaint with prejudice where additional facts alleged in plaintiffs'
12  opposition and at oral argument were insufficient to state a claim for securities fraud).

### III. CONCLUSION

For the reasons set forth above and in the Motion to Dismiss, Defendants respectfully request that the Court dismiss the FAC with prejudice.

Dated: September 14, 2011                COOLEY LLP


                                         */s/ John C. Dwyer*
                                         John C. Dwyer (136533)

                                         Attorneys for Defendants
                                         XENOPORT, INC., RONALD W. BARRETT,
                                         WILLIAM J. RIEFLIN, DAVID A. STAMLER,
                                         and DAVID R. SAVELLO

---

vesting of a security issued in accordance with Rule 16b-3") and thus cannot support scienter. *See, e.g., In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 611 (E.D. Pa. 2009) ("sales to cover tax liabilities . . . weigh[] against an inference of scienter."); *In re Sun Microsystems Sec. Litig.*, 1992 U.S. Dist. LEXIS 13009, at *20-21 (N.D. Cal. July 10, 1992) (payment of stock to fulfill tax liability does not support scienter) (citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. Cal. 1989)).

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

971850 v4/HN     15.     DEFENDANTS' REPLY TO PLAINTIFF'S
OPPOSITION TO MOTION TO DISMISS
CV-10-3301 RMW